### BUTLER et al. v. JOHANNSEN.

(Circuit Court of Appeals, Fourth Circuit.  June 10, 1914.)

#### No. 1237.

COLLISION (§ 95*)—STEAMER AND SCHOONER IN TOW—FAULT OF TUG.

    The decree of a district court affirmed, which found on conflicting evidence that a tug which had made fast to a schooner in a narrow channel, for the purpose of moving her to a pier when it should be vacated by a steamer, was solely in fault for a collision between the steamer and schooner when the former moved away and was attempting to pass, on the ground that the tug unnecessarily started moving the schooner instead of waiting until the steamer had passed.

    [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

    Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit in admiralty for collision, by Gerhard Johannsen, master of the steamship Wegadesk, against the steam tug Curtis Bay, the Curtis Bay Towing Company claimant, and the schooner Edward B. Winslow, Henry W. Butler, master, claimant, with cross-libels. Decree against the tug Curtis Bay, and its claimant appeals. Affirmed.

For opinion below, see 206 Fed. 919.

Harry N. Abercrombie, of Baltimore, Md. (Jacob France, of Baltimore, Md., on the brief), for appellants.

John W. Griffin, of New York City (Haight, Sanford & Smith, of New York City, on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and DAYTON, District Judge.

WOODS, Circuit Judge. The schooner Edward B. Winslow, in tow of the tug Curtis Bay, and the steamship Wegadesk came into collision in the channel of Curtis Bay, an arm of the Patapsco river, in the afternoon of April 21, 1913. The libel on behalf of the Wegadesk and the cross-libels on behalf of the Curtis Bay and the Edward B. Winslow having been consolidated, the District Judge, after discussion of the evidence, in an extended opinion held the tug Curtis Bay to be solely at fault and responsible to the Wegadesk for damages to the amount of $4,382.73 and interest. The appeal involves no question of law, but draws in question the court's conclusions of fact on the conflicting evidence.

The Wegadesk, 365 feet long and 52 feet beam, had taken on 6,600 tons of coal at the coal pier of the Baltimore & Ohio Railroad. The Edward B. Winslow, 400 feet long and 50 feet beam, was lying off waiting to dock at the same pier as soon as the Wegadesk should leave. About 4 o'clock in the afternoon, the Curtis Bay went alongside the Winslow and made fast for the purpose of taking her to the pier. The

channel at the point of collision is about 400 feet wide, and afforded scant water space for the Wegadesk to get out and safely pass the Winslow.  The Wegadesk having its bow to the shore at the pier, it was necessary for it to turn around before it could get through the channel into the open river.  In this movement it was aided by the tug Dalzelline.  Just after the tug had left and the steamer had straightened in her course, the collision occurred.  The claim of the Winslow and the Curtis Bay is that they had stopped far enough away not to interfere with the maneuvers of the steamship, and had been practically still for about 20 minutes, when the steamer went directly into the Winslow, although that ship was plainly visible, and although the Curtis Bay sounded warning whistles.  This claim is supported by the testimony of several witnesses, but it depends chiefly on the credence to be given to that of the master of the Curtis Bay, who was in charge of the tug and the schooner.

On the other hand, the witnesses on behalf of the Wegadesk testified that the Curtis Bay and the schooner, having been motionless and supposed by the master of the Wegadesk and the pilot in charge of her to be still so, without warning moved across the course of the steamer; that the schooner was between the tug and the steamer so that the tug which controlled could not be seen by the master or the pilot of the steamer; that they were watching carefully but did not discover the movement of the Winslow until it was too late to avoid the collision, although they immediately put their engines full speed astern.

Counsel agree that the decision depends entirely on the credibility of the witnesses, considered in the light of the surrounding conditions. Careful examination of the record and of the elaborate analysis of the evidence by counsel discloses some inconsistencies and improbabilities on both sides, but it leads to the conviction that the fault was that of the master of the Curtis Bay.  He saw plainly that the Wegadesk was executing a difficult maneuver and needed full water space.  He had been still, and he ought to have had in mind that, as the tug could not be seen from the Wegadesk, the master and pilot of the steamship in motion would not readily discover any movement of the Winslow. There was no need for immediate movement of the Winslow, and, in view of the scant space, due care required that she should remain motionless or move away from the steamer.  The strong preponderance of the disinterested testimony is to the effect that, under these circumstances, the master of the tug did move the schooner and tug into the course of the steamship without warning.  But, even if he had given warning, he would be in fault because there was no urgent need for him to be in haste to get to the pier and there was obvious peril in moving across the bow of the Wegadesk.

The explanation given by the master of the tug that the Wegadesk directed her course straight for the Winslow in full sight of her must be rejected because it is opposed to the preponderance of the testimony, and because it would have been purposeless folly on the part of the master.  Such a course would have sent the ship into inevitable collision with the Winslow or on the beach beyond.

There are other details of evidence supporting the conclusion of the

District Judge, who had the special advantage of hearing and seeing the important witnesses for the appellant; but this is enough to show that it is not opposed to the preponderance of the evidence, and therefore must be adopted by this court.

Affirmed.